**The STATE of Ohio**

v.

**LOGAN.**

Trumbull County Court of Ohio,
Eastern Division.

No. 95–TRC–640A.

Decided Oct. 16, 1995.

Kenneth Inskeep, Trumbull County Assistant Prosecuting Attorney, for the plaintiff.

James A. O'Brien, for the defendant.

RONALD JAMES RICE, Judge.

This matter came before the court on the defendant's motion to dismiss as filed on or about October 12, 1995. A hearing was held on the motion on or about October 12, 1995.

Defendant Patrick W. Logan was arrested by the Brookfield Township Police Department on July 28, 1995. The defendant was thereafter charged with operating a motor vehicle while under the influence of alcohol and/or a drug of abuse, and operating a motor vehicle with a prohibited blood-alcohol concentration, in violation of R.C. 4511.19(A)(1) and (3), respectively. (The violations will be referred to hereinafter collectively as "DUI.") In addition, the arresting officer, acting pursuant to the provisions of R.C. 4511.191, the state's Implied Consent Act, notified the defendant that he was being placed under an administrative license suspension ("ALS"), which had the effect of immediately stripping the defendant of his right to operate a motor vehicle in Ohio.

The defendant, through his legal counsel, has moved to dismiss the DUI charges. The arguments of the defendant are that the due process guarantees of Ohio Constitution are substantially equivalent to due process guarantees of the United States Constitution and, accordingly, United States Supreme Court decisions may be utilized to interpret Ohio guarantees. Fourteenth Amendment; Sections 1, 16, and 19, Article I, Ohio Constitution.

This court has previously ruled that the driver's license suspension proceedings under the Implied Consent Act are civil and administrative and are separate and

independent from any criminal prosecution. R.C. 4511.191. If the administrative license suspension of the defendant's driver's license under the Implied Consent Act was punishment, the fact that suspension was handed down in a noncriminal proceeding would not bar application of the Fifth Amendment's prohibition against multiple punishments. Fifth Amendment; R.C. 4511.191.

The prior administrative license suspension of the defendant's driver's license under the Implied Consent Act does not bar, under the Double Jeopardy Clauses of the United States and Ohio Constitutions, subsequent prosecution under R.C. 4511.19 for operating a motor vehicle while under the influence of alcohol or for operating a motor vehicle with prohibited blood-alcohol concentration. The license suspension is a remedial action for the safety of the general public and is not a punishment as argued by the defendant. Fifth Amendment; Section 10, Article I, Ohio Constitution; R.C. 4511.191.

The defendant's motion to dismiss is based upon defendant's belief that the institution of this prosecution subjects defendant to the possibility of successive punishments. Such a possibility, defendant claims, violates the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution. Defendant reasons that this constitutional violation is impermissible and necessitates the dismissal of all of the charges pending against defendant which have resulted from this arrest.

The state for its part urges that the protection of the Fifth Amendment and Section 10, Article I of the Ohio Constitution, which mirrors the United States Constitution's protection against double jeopardy protection upon which the defendant relies, are inapplicable to the matters now before this court. Additionally, the prosecution maintains that the ALS does not serve as a punishment at all, but, rather, serves only as a remedial function of protection.

The double jeopardy questions which the defendant raises involve due process rights which are guaranteed defendant under both the state and federal Constitutions. The guarantees, contained in Sections 1, 16, and 19, Article I of the Ohio Constitution, are substantially equivalent to the due process guarantees of the United States Constitution as applied to the states by the Fourteenth Amendment. *State ex rel. Heller v. Miller* (1980), 61 Ohio St.2d 6, 15 O.O.3d 3, 399 N.E.2d 66. The Ohio Supreme Court has accordingly held that United States Supreme Court decisions may be utilized to interpret the Ohio guarantees. *Peebles v. Clement* (1980), 63 Ohio St.2d 314, 17 O.O.3d 203, 408 N.E.2d 689.

It should be noted that the arguments which the defendant raises are specific to defendant's situation and speak only to the violation of defendant's individual constitutional rights. The defendant has not argued against the facial unconstitutionality of either the implied consent or the DUI statutes. The court is,

however, mindful of the fact that everyone upon whom a pretrial license suspension is imposed pursuant to the operation of the implied consent statute is similarly situated to this defendant and, therefore, is in a position to raise the identical issues.

The defendant's characterization of his ALS as punishment raises two questions for resolution: (1) Did the immediate suspension of the defendant's driving privilege, or for that matter, even a suspension after hearing, constitute a punishment which triggered a double jeopardy impediment to any further governmental enforcement action? (2) Did the payment of the $250 reinstatement fee by the defendant constitute a punishment which triggered a double jeopardy impediment to any further governmental action?

■ The defendant argues that the state's prior administrative suspension of defendant's driver's license constituted a separate proceeding which resulted in the imposition of a punishment. Defendant takes the position that the imposition of that prior punishment now prevents the state from maintaining this prosecution under the DUI statute.

Past decisions of the Ohio Supreme Court make it clear that a license suspension proceeding is, in fact, civil and administrative, as well as separate and independent, from any criminal prosecution. See *Hoban v. Rice* (1971), 25 Ohio St.2d 111, 54 O.O.2d 254, 267 N.E.2d 311, and *State v. Starnes* (1970), 21 Ohio St.2d 38, 50 O.O.2d 84, 254 N.E.2d 675. The prosecution in this case has not argued otherwise. It is equally clear that if this court determines that the suspension of the defendant's driving privilege is a punishment, the fact that the suspension was handed down in a noncriminal proceeding will not bar the application of the Fifth Amendment's prohibition against multiple punishments to this defendant's situation. See *United States v. Halper* (1989), 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487.

The Double Jeopardy Clause of the Constitution's Fifth Amendment provides, in pertinent part:

" * * * nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb * * *."

Section 10, Article I of the Ohio Constitution mirrors the protection afforded under the federal Constitution by employing similar language, to wit:

"No person shall be twice put in jeopardy for the same offense."

The punishment thrust of the defendant's double jeopardy argument hangs on his interpretation and application of two fairly recent decisions of the United States Supreme Court: *United States v. Halper, supra,* and *Montana Dept. of*

*Revenue v. Kurth Ranch* (1994), 511 U.S. ——, 114 S.Ct. 1937, 128 L.Ed.2d 767. The *Halper* court said, *inter alia:*

"This Court many times has held that the Double Jeopardy Clause protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense. See, e.g., *North Carolina v. Pearce,* 395 U.S. 711, 717 [89 S.Ct. 2072, 2076, 23 L.Ed.2d 656, 664–665] (1969). The third of these protections—the one at issue here—has deep roots in our history and jurisprudence." 490 U.S. at 440, 109 S.Ct. at 1897, 104 L.Ed.2d at 496.

The defendant in *Halper* was convicted of Medicare fraud. The United States subsequently brought a civil action against him under the False Claims Act, seeking additional civil penalties in the amount of $130,000. The United States Supreme Court held that a civil sanction that cannot fairly be said to solely serve a remedial purpose, but rather can be explained only as serving either retributive or deterrent purposes, is punishment for purposes of the Double Jeopardy Clause of the federal Constitution's Fifth Amendment.

In *Kurth Ranch,* the Supreme Court held that a Montana state proceeding to collect a tax imposed on confiscated illegal contraband drugs "was the functional equivalent of a successive criminal prosecution" that put the defendants in jeopardy a second time for the same offense. *Id.,* 511 U.S. at ——, 114 S.Ct. at 1948, 128 L.Ed.2d at 782. The tax which Montana sought to collect in that case was required only subsequent to an individual's arrest. For the *Kurth Ranch* defendants, the tax assessed was eight times greater than the market value of the confiscated contraband. The court's majority adopted the "inescapable conclusion" of the bankruptcy court that the purpose of Montana's drug-tax statute was deterrence and punishment, rather than remedial.

In *Halper, Kurth Ranch,* and the other cases cited by the defendant the government attempted to exact an additional monetary penalty from the defendants, over and above that which they would have been caused to suffer as a result of any criminal conviction for the same activity. See, also, the discussion of the history of forfeiture laws in general and of the forfeiture law involved in *Austin v. United States* (1993), 509 U.S. 602, ——, 113 S.Ct. 2801, 2812, 125 L.Ed.2d 488, 505–506. There has been such an attempt to exact a monetary penalty from the defendant at bar.

Certainly, the defendant's driving privilege, which the state has previously suspended, was no less valuable to him than the money that the defendants in the above-cited cases stood to lose. However, a crucial difference between defendant's license suspension is that the Ohio Supreme Court has already spoken to the issue of license suspension as penalty in the context of an implied consent violation.

In *Doyle v. Ohio Bur. of Motor Vehicles* (1990), 51 Ohio St.3d 46, 54, 554 N.E.2d 97, 104, the Ohio Supreme Court addressed the state's compelling interest in highway safety by saying: "We conclude that the state has a paramount interest in providing public safety by removing drunk drivers from the highways." The court reiterated its strong feelings on this matter in *Columbus v. Adams* (1984), 10 Ohio St.3d 57, 60, 10 OBR 348, 350, 461 N.E.2d 887, 890:

"The interests advanced * * * are of such a nature and importance * * * that the inconvenience occasioned by the temporary suspension of driving privileges pales by comparison."

In *Andrews v. Turner* (1977), 52 Ohio St.2d 31, 35–36, 6 O.O.3d 149, 151, 368 N.E.2d 1253, 1256, the Ohio Supreme Court said:

"R.C. 4511.191, the implied-consent statute, is 'a legislative response to the mischief of [drunk] drivers.' *State v. Hurbean* (1970), 23 Ohio App.2d 119, 131 [52 O.O.2d 152, 159, 261 N.E.2d 290, 300]. The general purpose of the statute is 'the protection of the public * * *. We construe the statute to suppress the mischief and advance the remedy.' * * * " (Footnote omitted.)

In the footnote found in the same opinion, the court went on to say that rather than a penalty, the requirements of the statute actually served as a benefit to some who are charged with DUI. *Id.* at 35, 6 O.O.3d at 151, 368 N.E.2d at 1256, fn. 3.

In *State v. Starnes,* 21 Ohio St.2d at 45, 50 O.O.2d at 88, 254 N.E.2d at 679, the Ohio Supreme Court cited with approval *Blow v. Commr. of Motor Vehicles* (1969), 83 S.D. 628, 632, 164 N.W.2d 351, 353:

" * * * 'The purpose of the suspension or revocation is to protect the public and not to punish the licensee. * * * ' "

■ In light of the fact that the Ohio Supreme Court has already declared the suspension of driver's licenses to be remedial in nature and not punishment, the defendant's double jeopardy argument with regard to the license suspension is unavailing and must fail. However, the factor in this case that makes this case different from the current cases pending in many of the courts of appeals and the Supreme Court of Ohio is the fact that the defendant has already paid the $250 ALS reinstatement fee to the Bureau of Motor Vehicles.

The defendant cites *State v. Gustafson* (June 30, 1995), Mahoning App. No. 94 C.A. 232, unreported, 1995 WL 387619, certified conflict accepted in case Nos. 95–1377 and 95–1466. The case at hand can be distinguished from the *Gustafson* case in that the defendant in this case has already paid the monetary reinstatement penalty of $250.

This court has previously held that the $250 reinstatement fee charged by the Ohio Bureau of Motor Vehicles has no rational relationship whatsoever to the remedial aspects of the implied consent statute. Thus, this court has already ruled that the $250 reinstatement fee is a punishment and any requirement to pay the $250 by the Bureau of Motor Vehicles is unconstitutional and violates the Double Jeopardy Clauses.

This court has already ruled on several occasions that the ALS reinstatement fee of $250 is *not* a remedial measure, is unconstitutional, and is nothing more than punishment; therefore, the defendant has been punished by the state in the form of already paying the reinstatement fee of $250.

## CONCLUSIONS OF LAW

Upon thorough review of all of the facts and circumstances presented, the court finds that under the decisions of the United States Supreme Court and the Supreme Court of Ohio, the suspension of the defendant's driving privilege pursuant to the provisions of R.C. 4511.191 is a remedial action for the safety of the public. The Ohio Supreme Court has explicitly said that such a suspension is not punishment. Therefore, the defendant's ALS suspension by operation of the provisions of the implied consent statute cannot be fairly characterized in any meaningful way as punishment.

However, the payment of the ALS reinstatement fee of $250 by the defendant mandates a finding that the sanction imposed on the defendant by the Bureau of Motor Vehicles was a punishment for purposes of double jeopardy.

## JUDGMENT ENTRY

Upon due consideration, the court finds that the defendant's motion to dismiss is well made. The DUI charges against defendant are therefore dismissed.

IT IS SO ORDERED.

*Judgment accordingly.*