ANDREWS, REGISTRAR, BUREAU OF MOTOR VEHICLES,
APPELLANT, v. TURNER, APPELLEE.

(No. 76-1350—Decided November 2, 1977.)

32

*Mr. John S. Cheetwood,* prosecuting attorney, *Mr. Chester H. Marcin* and *Mr. John M. Dunipace,* for appellant.

*Messrs. Kline, Corogin & Cottrell* and *Mr. Thomas L. Corogin,* for appellee.

CELEBREZZE, J. R. C. 4511.191, the implied-consent statute, is "a legislative response to the mischief of drunken drivers." *State* v. *Hurbean* (1970), 23 Ohio App. 2d 119, 131. The general purpose of the statute[3] is "the protection of the public * * * and to give effect to that general purpose there is prescribed separate from, independent of, and cumulative to criminal prosecution a clear remedy of suspending

[3]Chemical sobriety tests such as the one here involved also benefit the motor vehicle operator in certain instances since they eliminate mistakes which may follow from merely visual or objective observation and serve to insulate from liability those who have not drunk to excess but are involved in an automobile collision while having the odor of alcohol on their breath. In addition, the results of such a test may cause the dismissal of a drunken driving charge where an individual's conduct creates the appearance of intoxication when he is actually suffering from physical conditions over which he has no control.

the licenses of those drivers who refuse to take a sobriety test. We construe the statute to suppress the mischief and advance the remedy." *State v. Hurbean, supra,* at pages 131-132.

The sole issue before this court is whether appellee refused, upon the request of Sergeant Johnson, to submit to the breathalyzer test. It should be observed that since proceedings under R. C. 4511.191(F) are civil and administrative in nature, rather than criminal, a burden of proof less than proof beyond a reasonable doubt is sufficient for a valid suspension of a driver's license. *State v. Starnes* (1970), 21 Ohio St. 2d 38.

In order to determine what constitutes a refusal, it has been remarked that "[t]he fact of refusal to take the chemical test provided in R. C. 4511.191 appears whenever a preponderance of all the evidence shows that, under the circumstances described in the statute, the person who was given the request and advice in the statutory manner and form has thereafter conducted himself in such a way as to justify a reasonable person in the position of the requesting officer reasonably to believe that such requested person was capable of refusal and manifested unwillingness to take the test." *State v. Hurbean, supra,* at pages 126-127. Similarly, this court has stated that "[t]he licensee's words, acts, over-all conduct and other manifestations of a willingness or unwillingness to take the sobriety test will be considered by the trier of the facts in determining whether there was a refusal." *Hoban v. Rice* (1971), 25 Ohio St. 2d 111, 117.

At the municipal court hearing Sergeant Johnson testified that he was a duly licensed breathalyzer operator, and that a sobriety test administered earlier on the evening of February 2, 1976, approximately an hour and one half prior to appellee's contact with the device, revealed that it was functioning properly. The record* also establishes that

---

*This court viewed a video tape recording of the testing procedure, but this exhibit proved to be largely inconclusive as to the issue of refusal. Because the television camera focused on the backs of Sergeant Johnson and Mr. Turner it was not possible to observe appellee's mouth in contact with the mouthpiece of the breathalyzer.

Sergeant Johnson gave appellee precise instructions on how to supply a breath sample, allowing Turner to blow through the mouthpiece while it was detached from the device. When appellee failed to deliver a sample Sergeant Johnson remarked that, in his opinion, Turner was blocking the aperture of the mouthpiece with his tongue.

Appellee was given several more opportunities to provide a sample, with Johnson rechecking the device to ascertain whether it was free of obstructions. After more than a dozen purported attempts to blow into the device, Johnson apparently concluded that appellee was unwilling to supply a sample. Johnson then purged the breathalyzer device and confirmed that it was free of obstructions and was functioning properly.

We hold, as a matter of law, that reasonable minds could only conclude that a refusal was shown by a preponderance of the evidence. Our decision is in harmony with the decisions of other state courts.

In *Application of Kunneman* (Okla. App. 1972), 501 P. 2d 910, the licensee was instructed to blow into the mouthpiece of a breathalyzer machine. The officer involved testified that the licensee sucked on the mouthpiece instead of blowing into it. The officer stated that he repeated his instruction four or five times, and each time the licensee sucked on the mouthpiece. The court upheld the order revoking driving privileges, reasoning that although the licensee orally stated that he would submit to the sobriety test, his conduct amounted to a non-verbal refusal.

In *Newman* v. *Stinson* (Ky. App. 1972), 489 S. W. 2d 826, the licensee exhaled into a breathalyzer device but the operator of the machine was unable to obtain a reading from the sample. The licensee then refused to deliver another sample on the ground that he had sufficiently complied with the law. The court held that in the absence of a showing of impossibility of compliance, or the likelihood of harm resulting therefrom, the requirement of submission to the test contemplates that a sufficient sample be given to permit a test to be made and a test result obtained.

In *Woolman* v. *State, Dept. of Motor Vehicles* (1976),

15 Wash. App. 115, 547 P. 2d 293, the licensee blew once into the mouthpiece of a breathalyzer, but the sample was insufficient to obtain a reading. She was then asked to blow harder, and responded that she could do no better. The court upheld the order revoking her driver's license, reasoning that if she were unable to blow an amount of air sufficient to activate the machine, the burden was upon her to present evidence excusing her inability to comply.

R. C. 4511.191(G) establishes that the licensee must show error in the action taken by the registrar, and this court has stated that "[t]he burden is on * * * [the licensee] to prove by a preponderance of the evidence that there was error." *Hoban* v. *Rice, supra* (25 Ohio St. 2d at 116). Appellee did not attempt to show that the breathalyzer device was defective, nor did he allege that he was physically incapable of delivering a breath sample.[5] Thus, appellee has failed to show error in the action taken by appellant, and the judgment of the Court of Appeals must be reversed.

*Judgment reversed.*

O'NEILL, C. J., HERBERT and SWEENEY, JJ., concur.
P. BROWN, J., concurs in the judgment.
W. BROWN and LOCHER, JJ., dissent.

WILLIAM B. BROWN, J., dissenting. When the majority opinion rules as a matter of law that the appellee in the

---

[5] Although the question is not directly presented by the instant appeal, this court acknowledges that a "refusal" may be distinguished from a physical inability to perform a designated test. See, *e. g., State* v. *Rajala* (Ala. App. 1975), 310 So. 2d 223, where the court upheld a lower court finding that a driver did not refuse to take a breath test. The licensee had testified that she tried to inflate a balloon but was incapable of completing the test because she suffered from, *inter alia,* asthma and emphysema. In *Application of Scott* (1958), 5 A. D. 2d 859, 171 N. Y. Supp. 2d 210, the court annulled an order revoking the petitioner's operator's license. The licensee testified that he attempted to blow up a balloon, in order to deliver a breath sample, but that his false teeth kept getting in the way, and that they "came down" and cut off his breath.

instant cause *refused* to submit to a chemical test for intoxication, it extends the evidentiary indicia of refusal established by this court in *Hoban* v. *Rice* (1971), 25 Ohio St. 2d 111, and places an evidentiary burden upon the licensee in an R. C. 4511.191 hearing which is neither fair nor warranted by the purpose of the statute.

Paragraph three of the syllabus in *Hoban* v. *Rice, supra*, at page 111, defines refusal in the following manner:

"For the purpose of R. C. 4511.191, a refusal to submit to a chemical test of the blood, breath or urine will occur where a person, *by his acts, words, or general conduct, manifests an unwillingness to submit to the test.* * * *" (Emphasis added.)

The only evidence of refusal introduced at appellee's R. C. 4511.191 hearing was the patrolman's testimony that he thought appellee "was holding his tongue" on the breathalyzer tube while he was "trying to blow into it."[9] In contrast, the rest of the evidence indicated that appellee verbally assented to take the breathalyzer test; that he attempted to blow into the breathalyzer tube over a dozen times; that he asked the patrolman to demonstrate the use of the breathalyzer for him; that he appeared to be generally cooperative and truthful with the policeman; and that he willingly participated in all the nonchemical tests for intoxication which the officer proposed.

Under *Hoban,* evidence of refusal is determined by the licensee's "acts, words or general conduct." In the instant cause, appellee's "acts, words or general conduct" did not manifest "an unwillingness" to take the test. Since the appellee did not refuse under the indicia set forth in *Hoban,* the majority looks to other evidence—the inability of either party to demonstrate whether the breathalyzer was functioning properly when appellee took the test—to arrive at its finding. By finding this other evidence sufficient to indicate refusal, the majority extends the indicia of refusal set forth in paragraph three of the *Hoban* syllabus by requiring the licensee in an R. C. 4511.191 hearing to prove

[9]See footnote No. 4.

that the breathalyzer was not functioning when he took the test. Obviously the licensee is at a marked disadvantage under such an extension of the *Hoban* opinion.

Moreover, the new burdens placed on the licensee, by the majority opinion fail to effectuate the intention of the statute. The purpose of R. C. 4511.191 is not merely to discourage drunken driving by suspending the licenses of those arrested for driving while under the influence of alcohol. Under R. C. 4511.99 such persons are already subject to a three-days' imprisonment; and a person may have his license suspended under R. C. 4511.191 for refusal to submit to the test, even though he is cleared on the drunken driving charge. The purpose of R. C. 4511.191 is to discourage any person from *refusing* to take the chemical intoxication tests when he is arrested for drunken driving. Punishing these persons for their inability to explain why the machine did not function may make it easier to suspend licenses, but it does not deter *refusals*.

Because the majority opinion alters Ohio law in a manner which is unfair to licensees and which does not further the purpose of R. C. 4511.191, I dissent.

LOCHER, J., concurs in the foregoing dissenting opinion.